**Opinion filed November 30, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00294-CR

_____

## OSIEL ALVAREZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-42,672**

## M E M O R A N D U M   O P I N I O N

Appellant pleaded guilty to the offense of aggravated robbery. He also pleaded "true" to the allegation that, during the commission of the offense, he used or exhibited a deadly weapon. After the jury found Appellant guilty and found the deadly weapon allegation to be true, the trial proceeded into the punishment phase. Appellant had elected to have the jury assess his punishment. Although Appellant

had pleaded "true' to two enhancement paragraphs (subject to objections not relevant to this appeal), the jury found only one of them to be true and assessed Appellant's punishment at confinement for life and a $5,000 fine. We affirm.

Appellant urges reversible error in three separate issues on appeal. In his first issue on appeal, Appellant complains that the trial court reversibly erred when it denied him the right to voir dire a witness that he considered to be an expert witness. An overruled hearsay objection is the subject of Appellant's second issue on appeal. Finally, in his third issue on appeal, Appellant finds fault with the trial court's ruling on an objection that he made to the State's final jury argument.

At the time of this offense, Heather Conner was a fourth grade teacher at Compass Academy in Abilene. She testified that on August 1, 2013, she had been to a work-related training session. After she left the session, she went home to pick up her daughters, Alexa and Macayla. Five-year-old Macayla's birthday was the following day. They had planned a birthday party for later that evening ahead of her actual birthday. Their plan was to stop at HEB on the way to the party to pick up drinks, other refreshments, and a birthday cake that Heather had previously ordered.

Things did not work out the way that they had planned. When they arrived at HEB, Heather parked her car in the parking lot, and she and her daughters walked toward the store. About the time that the three reached the crosswalk that extended from the parking lot to the store, she noticed a vehicle coming toward them. When the vehicle reached Heather and her daughters, Appellant, a passenger in the vehicle, asked Heather for directions. As Heather gave directions to Appellant, he reached back into the car, held out a white piece of paper, and pointed at it. Heather stepped forward to see the paper. When she stepped forward, Appellant grabbed her purse, and the driver "gassed it" and took off through the parking lot. Heather got tangled in her purse, and as it came off, she tried to hold on to it as the driver sped through the parking lot. She ultimately held onto the window until Appellant shoved her

2

away. When Appellant shoved her away from the vehicle, Heather "flew" off and landed in the parking lot. Her young daughters screamed and cried as they ran to help her.

Shortly after the incident, personnel from HEB and others helped tend to Heather's daughters, and an HEB employee began to clean and bandage Heather's wounds. Dr. James Adams, a physician who later treated Heather, testified at trial. The injuries that Heather received in the assault turned out to be very serious, and even with surgery, she will not recover the normal use of her injured arm.

While Heather was still at HEB, she began to receive calls from credit card companies and was told that her credit cards were being used. Police later apprehended Appellant and the driver of the car.

We will first address Appellant's complaint that Brenda Hardin was an expert witness and that the trial court committed reversible error when it did not allow him to voir dire the witness under Rule 705(b) of the Texas Rules of Evidence. Rule 705(b) provides that, before an expert states an opinion or discloses the underlying facts or data, the trial court must allow a defendant in a criminal case to voir dire the witness about the underlying facts or data. TEX. R. EVID. 705(b).

Brenda Hardin was not an expert witness. Hardin had retired after twenty years of employment with the Texas Department of Criminal Justice Parole Division. She began her employment as a parole officer who supervised offenders and later worked as a unit supervisor, and in that capacity, she supervised other officers.

During direct examination by the State, the prosecutor asked Hardin to describe the parole process, including the process applicable to out-of-state parolees such as Appellant. Hardin had supervised Appellant; he had been placed on parole from the State of Missouri for unlawfully carrying a weapon and possession and concealment of a controlled substance in a jail facility. The State also asked Hardin

3

whether, as far as Texas was concerned, she had "ever supervised somebody on parole for possession of a controlled substance in a jail facility." She answered that she had. The prosecutor then asked, "What level offense is that?" As Hardin began to answer, Appellant's counsel told the court, "Objection, Your Honor. May I take [the witness] on Voir Dire?" The trial court responded, "No, sir. You can cross-examine her when the time comes." Hardin testified that the offense was a third-degree felony in Texas. Although Appellant's attorney did cross-examine Hardin, counsel made no further objection.

Hardin never testified to her opinion about anything; she merely stated the facts as she knew them. Hardin's testimony that possession of a controlled substance in a jail facility was a third-degree felony was not an opinion. When she did not know a particular fact—for instance, whether the law was the same in Missouri—she testified that she did not know. Because Hardin did not testify as an expert, the trial court did not err when it refused to allow Appellant to engage her in voir dire under Rule 705(b). We overrule Appellant's first issue.

Greg Conner, Heather's husband, was a police officer for about twenty years before he obtained his law license. Greg subsequently served in several prosecutorial positions. He was in his office in the Ector County Courthouse when Heather called him. When Heather told Greg about the robbery, he went to the HEB. Greg testified that "you can never quit being a cop," and he immediately began to gather ideas and evidence to provide to the police when they arrived.

The events surrounding the robbery were captured on video surveillance equipment. At some point in time, Greg viewed the entire surveillance video. Only a portion of the video was introduced into evidence at trial. Over Appellant's hearsay objection, the trial court allowed Greg to testify as to the contents of the portion of the video that was not introduced into evidence. In his second issue on appeal, Appellant claims that the trial court thereby reversibly erred.

4

The State does not expend many words in defense of the introduction of the testimony. *See* TEX. R. EVID. 1001–1009. Rather, the State claims that any error did not result in such harm as would require that we reverse this case. We agree that, even if we were to assume that the trial court abused its discretion when it admitted Greg's testimony, the error is not reversible.

If a trial court commits error when it erroneously admits hearsay evidence, the error is nonconstitutional. *Render v. State*, 347 S.W.3d 905, 920 (Tex. App.—Eastland 2011, pet. ref'd). We must disregard a nonconstitutional error if it does not affect substantial rights. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. Ap. 2001)). "In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, whether the State emphasized the error, and whether there was "overwhelming evidence of guilt." *Id.* at 357.

Here, Heather testified that she and her daughters were in the crosswalk in the parking lot about to enter HEB when she saw the car in which Appellant was riding coming toward her. The "window rolled down" and the car stopped. After Appellant asked for directions, he got a piece of paper from inside the car and held

5

it out toward Heather. When she leaned in, "[Appellant] came out of the car, like, just his upper body," and grabbed the purse, and the driver took off as Heather held on until Appellant shoved her loose and sent her flying in the parking lot. The jury also heard how Heather's daughters were screaming and crying as they watched the events unfold. Further, the jury heard testimony that described the severity of the injuries suffered by Heather. The jury also heard that, as Heather was being treated for her injuries, Appellant and the driver were already using the credit cards at places such as Stripes, 7-Eleven, Game Stop, Sally Beauty Supply, and Bealls.

The jury also heard testimony regarding Appellant's criminal record. In Missouri, he had been convicted of unlawful use of a weapon and possession of a controlled substance in a jail facility. He had also had his deferred adjudication revoked in connection with a charge of aggravated assault with a deadly weapon, and he had convictions for trespassing, evading arrest, two cases of driving while intoxicated, and false identification. Additionally, law enforcement officers testified as to Appellant's propensity, while in jail, to exhibit his penis to female officers, to ask female officers whether they were wearing thong underwear or no underwear— so that he could have sex with them, to "flip [them] off," and to do and say many other lewd and disrespectful things while in custody.

Heather testified that her recitation of the facts is fairly and accurately represented by the portion of the surveillance video that was admitted at trial. Greg testified that the portion of the unadmitted video that he watched showed that Appellant and the driver stalked Heather before they attacked her, that they were predators, and that the attack was planned and premeditated. We agree with the State that the jury could reasonably infer those matters from Heather's testimony, from the video that was admitted into evidence, and from the other evidence in the case. We also note that the State only briefly referred to Greg's testimony about the video.

6

When we review the record as a whole, we have fair assurance that any error in the admission of Greg's testimony did not influence the jury in its assessment of punishment, or had but a slight effect. Appellant's substantial rights were not affected by the admission of Greg's testimony about the portion of the video that was not in evidence. We overrule Appellant's second issue on appeal.

In his third issue on appeal, Appellant maintains that the trial court erred when it failed to sustain certain objections to the State's jury argument. Proper jury argument generally falls within four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Esquivel v. State*, 180 S.W.3d 689, 692 (Tex. App.—Eastland 2005, no pet.). Counsel is allowed wide latitude to draw inferences from the record as long as the inferences are reasonable, fair, legitimate, and offered in good faith. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).

Specifically, Appellant first complains of the State's jury argument wherein the State argued, "[Appellant is] sitting there like this, going through credit cards. Using coupons. Even trying to return the PlayStation 3 so he can get cash." Appellant objected that the prosecutor was "[a]rguing outside the evidence." The trial court overruled the objection and commented, "The jury will recall the evidence." Appellant argues that there was no evidence to show what Appellant's motive was for returning the PlayStation 3 to Game Stop and that the State's comment was "complete speculation" and "simply served to inflame the prejudices of jury members against [Appellant]." We hold that the argument was a logical inference from the record. As the State argues, there could be few, if any, reasons to return an item paid for with a stolen credit card except to acquire cash. We agree with the State that Appellant certainly was not seeking to return the PlayStation 3 so

7

that Heather could receive proper credit on her credit card bill. The argument was not improper.

Appellant next finds fault with that part of the State's jury argument in which the prosecutor told the jury, "What kind of message do you send if you even think about 15 or 20 or 30 years on this thing? Why don't they do something about it? Today, they are you. You are the only ones, and I am counting on you to send this message."

An argument by the State is improper if it induces the jury to reach a particular verdict based upon the demands, desires, or expectations of the community. *See Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984) (the argument, "Now, the only punishment that you can assess that would be any satisfaction at all to the people of [this] county would be life," is improper); *Mata v. State*, 952 S.W.2d 30, 33 (Tex. App.—San Antonio 1997, no pet.) (improper to argue, "So I ask you, this is a hard decision that you have to make, but I will tell you on behalf of the State of Texas, an aggravated sexual assault such as this, *probation is not what this community and what the State would want*."). On the other hand, an argument constitutes a proper plea for law enforcement if it urges the jury to be the voice of the community, rather than asking the jury to lend its ear to the community. *Cortez*, 683 S.W.2d at 421. Therefore, a prosecutor's request that the jury "represent the community" and "send a message" is within the bounds of proper argument as a plea for law enforcement. *See Goocher v. State*, 633 S.W.2d 860, 864 (Tex. Crim. App. [Panel Op.] 1982) (it was proper for the State to argue, "I am asking you to enforce it. I'm asking you to do what needs to be done to send these type of people a message to tell them we're not tolerating this type of behavior in our county."); *Caballero v. State*, 919 S.W.2d 919, 924 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding proper the argument, "[J]urors are sick and tired of this. Jurors are tired of

crime because jurors such as yourself are members of the community you represent. You represent the community.")

Here, the State did not pressure the jury to reach a particular verdict based upon the demands, desires, or expectations of the community. Rather, the prosecutor argued that the jury represented the community and asked the jury to send a message by its verdict. The complained-of argument effectively asks the jury to act as the voice of the community, not to lend its ear to the community. The argument constitutes a proper plea for law enforcement. Accordingly, we hold that the trial court did not err by overruling Appellant's objection to the argument. We overrule Appellant's third issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


November 30, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.